SELLERS MOTOR Co. *et al. v.* CHAMPION SPARK PLUG Co. *et al.*\*

(Division B.   May 7, 1928.)

[116 So. 883.   No. 26637.]

---

\*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 901, n. 1; Sales, 35Cyc, p. 464, n. 90; Findings of trial court on conflicting evidence not disturbed on appeal unless manifestly wrong, see 2 R. C. L. 203; 1 R. C. L. Supp. 442; 4 R. C. L. Supp. 91; 5 R. C. L. Supp. 81; 7 R. C. L. Supp. 37.

*Watkins, Watkins & Eager,* for appellants.

*Green, Green & Potter,* for appellees.

PACK, J. Bills in chancery were filed by Sellers Motor Company, Incorporated, and J. D. Sellers, as an individual, against Orgill Bros. Hardware Company, garnishee and a resident defendant, and Champion Spark Plug Company, nonresident defendant. There were also several other parties made defendants as garnishees. In the first suit, the complainant sought to recover the value of an aeroplane, and in the second suit recovery was sought for personal injuries alleged to have been sustained by J. D. Sellers by the falling of said aeroplane. The two cases were consolidated and tried together. The bills alleged, substantially, that Orgill Bros. Hardware Company is a local dealer in hardware; that the Champion Spark Plug Company is a manufacturer of Champion spark plugs, one class of which is designed for use in aeroplanes; that Sellers Motor Company owned and had in use a standard, eight-cylinder Hispano Suiza aeroplane of one hundred eighty horse power; that the salesman of Orgill Bros. Hardware Company, accompanied by a factory representative, called upon the complainant J. D. Sellers, manager of Sellers Motor Company, and sold to complainant twenty of these spark plugs to be used in said aeroplane; that in making said sale both representatives warranted said spark plugs as to quality and material, and guaranteed that they were manufactured and designed for use in aeroplanes similar to the one owned by complainant; that, in purchasing said spark plugs, said representations were relied upon by complainants. It was further alleged that said plugs were shipped by the Champion Spark Plug Company from its factory to complainants, but that the order was handled through Orgill Bros. Hardware Company, and payment for same was made to the latter; that, in the

box containing said plugs, there was the following guaranty:

"The complete dependability of Champion spark plugs is made absolutely certain by careful manufacture to correct designs, with exacting laboratory tests more severe than the plug will ever get in actual service."

On the container, there also appeared the manufacturer's guaranty reading as follows:

"Champion spark plugs are guaranteed to give absolute satisfaction to the user, or full repair or replacement will be made."

It was further alleged that the spark plugs were installed in the aeroplane, and with Mr. Sellers, one of the complainants, as pilot, the plane arose from the flying field to a height of approximately three hundred feet in the air, when, because of the defective construction of said plugs, the same being unsuited for use in this particular motor, the machine fell to the ground and was wrecked and demolished, and complainant Sellers sustained personal injuries in the fall.

All material allegations of the bills were denied in the answers of defendants. There was sharp conflict in the evidence, and especially as to whether the condition of the spark plugs proximately caused the plane to fall.

Sellers himself testified that he rose, flew some one thousand two hundred feet, turned, and was returning to the field, flying at a height of about five hundred feet; that the motor was missing, and there was severe vibration in the motor; that he shut off the power, and turned it on again, when he suddenly became unconscious and fell. He thinks something was thrown through the windshield, striking his head and rendering him unconscious, and, but for becoming unconscious, he could have landed safely, but when he lost consciousness he lost control of the plane.

The decree of the chancellor denied relief and dismissed the bills. The chancellor also delivered a written

476

opinion which appears in the record, in which reference is made to the above testimony, which was probably, an important factor in enabling him to arrive at a conclusion.

As we view the case, it was a question of fact submitted to the chancellor on conflicting evidence. In such cases, this court will not disturb the chancellor's finding, unless it appears from the record to be manifestly wrong. The record, though voluminous, has been carefully read and considered, and we think there was ample testimony to support the finding of the chancellor.

*Affirmed.*